## Case No. 16,988.

### VOGLER v. SPAUGH et al.

[4 Biss. 288.] [1]

Circuit Court, D. Indiana. Jan., 1869.

CONFISCATION — PLEADING — PAROL EVIDENCE — CONTRADICTING OFFICER'S RETURNS.

1. Assumpsit on a note for $1010, executed by Robert Spaugh, Thomas Essex, and John Essex to the plaintiff. Plea, non-assumpsit. The defendants offered in evidence a record of the United States district court for the district of Indiana, showing a confiscation proceeding and sentence against the plaintiff concerning a note described therein as a note of $1000. executed to him by Robert Spaugh and John Essex, and showing that the last-named note had been seized by the marshal under proper process, confiscated by the court, and sold on a venditioni exponas by the marshal. The defendants offered to prove by parol that the latter was the same note sued on in this action. And the plaintiff offered to prove by parol that the marshal's return that he had seized the note was false; and that the charge against him of aiding and abetting the Rebellion, on which the sentence of confiscation is founded, was untrue. *Held*, that the plaintiff could not contradict the marshal's return by parol evidence.

2. The plaintiff could not contradict said record by proving that he never aided or abetted the Rebellion.

3. Parol evidence was inadmissible to prove that the note confiscated is the same note on which this suit is founded.

4. The said record of confiscation is conclusive upon the parties to this action as to all facts alleged in it.

5. Under the evidence in the case, the plaintiff was entitled to recover the amount of his note and interest.

At law.

Hendricks, Hord & Hendricks, for plaintiff. M. M. Ray, for defendants.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

McDONALD, District Judge. This case is submitted to the court for trial without a jury, pursuant to the 4th section of the act of March 3, 1865 (13 Stat. 501).

The action is assumpsit on a promissory note. Plea, the general issue.

The plaintiff produced in evidence the note sued on. It is as follows:

"1010. Hope, February 18, 1859. One day after date we or either of us promise to pay John Vogler or order one thousand and ten dollars, for value received, waiving all valuation and appraisement laws of the state of Indiana. Robert Spaugh. Thomas Essex. John Essex."

The defendants produced in evidence a record of the district court of the United States for the district of Indiana, purporting to be a proceeding by the government against "one promissory note for one thousand dollars, and John Vogler." By this record it appears that a libel in the name of the United States was filed in said court on the 30th of April, 1863, charging that John Vogler was then the holder of a note for one thousand dollars, executed to him by Robert Spaugh and John Essex "some time since;" that "said John Vogler was a person guilty of aiding and abetting an armed rebellion against the government of the United States;" and that said note had thereby become forfeited to the government, under the provisions of the act of congress of July 17, 1862 (12 Stat. 589). The libel prayed process, &c.

On the same day process on said libel was issued to the marshal. This process, after reciting the facts set forth in the libel, commanded the marshal "to attach the said note, and to detain the same in his custody until the further order of the court."

On the 2nd of May, 1863, the marshal returned this process with the indorsement, that he had "arrested the property within mentioned," and had made the proper citation, &c.

At the same time a summons in said cause was duly issued and served on Robert Spaugh and John Essex.

On the second day of June, 1868, Spaugh appeared to said action, and made oath in open court, that said note was made by him for borrowed money, on the 18th of March in the year 1859, or 1860, and signed by said John Essex; and that two hundred dollars ought to be credited on the note.

The record shows that, on due proclamation being made, June 6, 1863, a decree by default was rendered to the effect that "said note for the sum of one thousand dollars was forfeited to the United States; that a venditioni exponas should issue to the marshal, commanding him to sell at auction said one-thousand-dollar note, subject to said credit of two hundred dollars; and that the marshal, on such sale, should by certificate assign and transfer said note to the purchaser."

The record also shows that a writ of venditioni exponas was issued in pursuance of said decree; and that by virtue thereof the marshal, on the 16th of September, 1863, sold the note for seven hundred and fifty dollars to one David Long.

The defendant, Robert Spaugh, testified, that the note sued on was executed by him as principal, and by the other defendants, Thomas Essex and John Essex, as his sureties; that it is the only note he ever gave the plaintiff; that he was summoned in said confiscation case, and answered to that proceeding by attorney; that he was not present when the marshal sold the note under said decree of confiscation: that he furnished to James A. Butler seven hundred and fifty dollars, who with that sum procured one Long to bid off the note for Spaugh at the marshal's sale, which money Long paid on said bid, taking the marshal's receipt therefor; that he had no part in setting on foot said confiscation proceedings, and had no hand in it except as aforesaid; and the plaintiff is an old man, and is uncle to Spaugh.

The plaintiff then produced Mr. Biglow as a witness, who testified that, during the pendency of all said confiscation proceedings he was deputy to the marshal of the district of Indiana: that, as such, he performed all the marshal's duties in those proceedings; and that no actual seizure or possession of said note was ever made or had by said marshal or by any of his deputies at any time.

The deposition of the plaintiff was then read in evidence. In this deposition the plaintiff says that he is eighty-five years old, and has resided in North Carolina all his life; that said note was given for borrowed money, and was delivered to him about the time of its date, and was constantly in his actual possession in said state till the fall of 1867, when he sent it to Indiana for collection; that about the close of the Rebellion, he heard that the note had been confiscated; that he had no other notice or knowledge of the pendency of any proceedings against him for that purpose; that he gave no voluntary aid to said Rebellion; that he paid such taxes as he was compelled to pay, and none others; that from charitable motives, and with no view of aiding the Rebellion, he furnished some provisions to Confederate soldiers; that he fed and gave more victuals to Union soldiers, than ever he did to Confederate soldiers; and that he was an old Henry Clay Whig, and was utterly and heartily opposed to secession and the late Rebellion.

By several other depositions, the plaintiff abundantly proved that he gave no aid to the Rebellion, but was utterly opposed to it, and was a good Union man throughout the late war.

All this evidence, except the note itself, was given under objections, with the understanding that the court should disregard so much of it as should be deemed inadmissible.

The principal question in this case is whether the facts thus proved are a bar to this action. And this involves three subordinate questions: 1. Is the evidence offered to contradict the marshal's return in said confiscation proceeding admissible? 2. Is the evidence offered to contradict the allegations in said libel charging that

Vogler aided and abetted the Rebellion admissible? 3. Is the evidence offered to prove the identity of the note sued on with the confiscated note admissible?

I. Is the evidence offered to contradict the marshal's returns in the confiscation case admissible?

The plaintiff insists that an actual seizure by the marshal of the note was indispensable to the jurisdiction of the court pronouncing the sentence of confiscation. As this point is now before the supreme court, and as I think the present case does not turn on it, I shall leave it undecided.

The marshal's return in the confiscation case, as shown by the record, expressly states that he had "arrested" the note. This, I think, is equivalent to saying that he had taken actual possession of it. And the question is, can his return be contradicted in this collateral way? It is certain that in an action against a marshal for a false return, it might be contradicted by parol evidence. Such a return, however, when made becomes a part of the record, and has the same force and sanctity as any other part of it. Upon general principles, therefore, the marshal's return cannot be collaterally contradicted by any party to the record. He is estopped by it on the well-known rule that records estop parties and privies. This doctrine has been so often declared as to need no lengthy discussion. Hamilton v. Matlock, 5 Blackf. 421; Burger v. Becket, 6 Blackf. 61; Remington v. Henry, Id. 63; Lines v. State, Id. 464; Purrington v. Loring, 7 Mass. 388; Townsend v. Olin, 5 Wend. 207.

Indeed, as said confiscation case was a proceeding in rem, it may well be questioned whether the record does not estop, as well all men, as parties and privies. 1 Greenl. Ev. § 525.

On the whole, I think it clear that the evidence tending to contradict the marshal's return is inadmissible.

II. Is the evidence offered to contradict the allegations in said libel charging that Vogler aided and abetted the Rebellion admissible?

By the record in the confiscation case, it appears that Vogler was legally notified of the pendency of that proceeding; that, on due proclamation made, he was defaulted; and that, on hearing evidence, the court regularly pronounced sentence of confiscation. These proceedings necessarily involved a decision that Vogler had aided and abetted the Rebellion. On what principle Vogler, who was regularly a party to these proceedings, can now come forward and, in this collateral way, contradict this record, it is difficult to see. What I have said about contradicting the marshal's return, equally applies to this question. Whether Vogler aided and abetted the Rebellion, is res judicata. The record pronounces that he did. And that he cannot collaterally and by parol evidence contradict that record, is too well settled to admit a doubt. Hopkins v. Lee, 6 Wheat. [19 U. S.] 109; Miles v. Caldwell, 2 Wall. [69 U. S.] 35; Supervisors v. U. S., 4 Wall. [71 U. S.] 435.

III. Is the evidence offered to prove the identity of the note sued on with the confiscation note admissible? In other words, from all that is before me, must I conclude that the note in suit has been confiscated in the proceeding in rem referred to?

In the confiscation proceeding, the note is described as "a note of one thousand dollars, executed some time since" by Robert Spaugh and John Essex to John Vogler. The note in suit, as we have seen, is a note for one thousand and ten dollars, dated February 18, 1859, executed by Robert Spaugh, Thomas Essex, and John Essex, payable to John Vogler or order one day after date. Prima facie, these are not one and the same note. Robert Spaugh swears that the instrument in suit is the only note he ever executed to John Vogler. And the defendants insist that, from this evidence, I ought to conclude that the notes are identical; and that consequently the plaintiff cannot recover. If this premise is right, the consequence must inevitably follow.

But is it true that, from this evidence, I must conclude that the note confiscated and the note in suit are one and the same? I think it is not. I think I am bound to conclude that they are distinct and different notes. I suppose that I cannot permit that any parol evidence shall contradict the confiscation record. By a comparison of the note in suit with that record, it appears that the note sued on is for one thousand and ten dollars; and that the confiscated note was only for one thousand dollars; and that the former was executed by three persons, and the latter only by two. In all litigation the subject matter of the suit must be so described as to render its identity plain. Such description must be a part of the record; and it can no more be collaterally contradicted after judgment than any other part of the record. Suppose A sues B for land, and describes it as the south half of section one, and recovers judgment for it, can either of them afterwards be permitted to say that the suit was really for the north half of that section? In Mahan v. Reeve, 6 Blackf. 215, where, in a partition proceeding, the land was described as section 28 instead of section 23, it was held that even a court of chancery, in a direct proceeding for that purpose, would not correct the mistake.

The general rule already mentioned touching the absolute verity of records, is the same, as applied to the correction of supposed mistakes in them, as to any other attempts to contradict them.

I must therefore hold that the note sued on is not the confiscated note. On this holding the whole defense falls; and I must find the issue for the plaintiff, and assess the damages at the amount of the note and interest.

The case referred to as pending in the supreme court, and which holds that the marshal must take the note into his actual custody and control, is Pelham v. Rose, 9 Wall. [76 U. S.] 103.